**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KAY E. VUGRIN,

    Plaintiff,

v.                                        CIV 13-0972 KBM/KK

STANCORP FINANCIAL GROUP, INC.
d/b/a STANDARD INSURANCE COMPANY
a/k/a STANDARD INSURANCE COMPANY
OF PORTLAND, OREGON a/k/a
THE STANDARD,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    This ERISA case comes before the Court on Defendant's motion for partial summary judgment (Doc. 29) as to Plaintiff's claim for long-term disability benefits and Plaintiff's motion in limine (Doc. 20) seeking to exclude any evidence in the filed administrative record (Doc. 17) that post-dates August 15, 2013, when Plaintiff presumptively exhausted her available administrative remedies.

    Plaintiff's motion in limine raises a legal question that also bears on Defendant's motion for partial summary judgment: the appropriate level of deference, if any, the Court must give to Defendant's review decision issued after Plaintiff filed this lawsuit.

**I.  Facts[1]**

    Plaintiff began working for VeraLight, Inc. on May 16, 2011 as a senior scientist. Defendant's Motion for Partial Summary Judgment, Doc. 29 ("Def's MSJ") at

---

[1] Defendant has helpfully provided an index of the administrative record. *See* Doc. 26-1. Any references to the facts will reference the Administrative Record, not the docket number, since the parties prefer this citation format.

Undisputed Fact s ¶1.  Plaintiff stopped working on January 19, 2012 due to physical ailments that were ultimately diagnosed as fibromyalgia.  AR 118–19; Def's MSJ at ¶5.  Ms. Vugrin was a participant in VeraLight's "employee welfare benefits plan."  Def's MSJ at 2.  VeraLight funded both short- and long-term disability claims through separate insurance policies issued by Defendant.  Def's MSJ at ¶2-3.  Defendant administered the claims brought under the plans.  Def's MSJ at ¶4.

On February 9, 2012, Defendant sent Plaintiff a letter informing her that she had received approval for her application for "Short Term Disability (STD) benefits."  AR 108; Def's MSJ at ¶6.  This letter stated that Plaintiff would need to periodically supply information substantiating her continued disability in order to remain eligible for STD payments.  AR 108.  According to Plaintiff, she submitted "further verification" of her medical condition in response to the letter.  Doc. No. 31-1 ("Vugrin Affidavit") at ¶5.

On March 28, 2012, however, Defendant sent Plaintiff a letter stating that the medical information in her claims file did not document a finding that she was still "disabled" as defined by the STD policy as of March 14, 2012, which was actually two weeks *before* the date the letter was sent.  The letter further informed Plaintiff that her STD benefits were scheduled to end as of March 14 and advised Plaintiff that additional information was necessary to determine whether STD benefits were payable beyond that date.  AR 111; Def's MSJ at ¶7.  Thus, Defendant terminated Plaintiff's STD benefits about six weeks before April 25, 2012, the outside date for which short-term benefits were available to Plaintiff under the policy if she was continuously disabled.  *See* AR 109.

Plaintiff maintains that Defendant's March 28 letter was the first she heard from Defendant after the letter informing her that her STD claim had been approved. Vugrin Affidavit at 6. In response, on April 12, 2012, Plaintiff sent a letter to Defendant seeking a reconsideration of its termination of the STD benefits and providing additional information about her healthcare providers. AR 153; Def's MSJ at ¶8. On July 25, 2012, Defendant reaffirmed its determination that Plaintiff was no longer disabled. AR 392.

On March 20, 2013, Plaintiff appealed Defendant's claim decision. *See* AR 427, 430, 437–450; Def's MSJ at ¶10. Under 29 C.F.R. §2560.503-1(i)(3)(i), this triggered a timeline which mandated Defendant to issue a decision within 45 days of the appeal. That regulation allows Defendant to extend this deadline no more than 45 days, and only in the event of "special circumstances" requiring such an extension. *Id.* § 2560.503-1(i), (i)(3)(i). Thus, with the extension, Defendant was required to issue a decision no later than August 15, 2013. *See* Doc. 1, Exh. A at 14.

## II.     Plaintiff's Motion in Limine (Doc. 20)

Generally, if an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits under the plan, then a challenge to a reasoned denial of benefits is subject to an "arbitrary and capricious" standard of review. *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 630 (10th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, if an administrator fails to issue a reasoned decision for its denial within the time limit set out in 29 C.F.R. § 2560-503.1(i), then a challenge to the initial benefits denial is subject to *de novo* review because the claimant presumptively exhausted available administrative remedies before the administrator

exercised any discretionary review.  *See* 29 C.F.R. § 2560-503.1(l); *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 799 (10th Cir. 2010).

Plaintiff argues that because Defendant failed to issue a reasoned decision affirming its initial denial of her benefits claim within the time limits set out in 29 C.F.R. § 2560-503.1(i), the Court may only consider information in the administrative record that existed at the time Plaintiff had presumptively exhausted her available administrative remedies.  Motion in Limine at 3-4.  Plaintiff contends that any information generated after the August 15, 2013 deadline for a decision would be irrelevant to this Court's review.

To resolve Plaintiff's motion, two questions must be decided:  (1) whether Defendant's failure to issue a review decision within the timeline in 29 C.F.R. § 2560-503.1(i) would entitle Plaintiff to a *de novo* review of Defendant's denial of short- and long- term benefits; and (2) if yes, whether this Court must strike from the administrative record any information added after the date Plaintiff had presumptively exhausted available administrative remedies.

   1. Entitlement to *de novo* or deferential review

The Tenth Circuit Court of Appeals has held that a failure to complete an administrative review of a benefits denial under ERISA entitles a claimant to seek *de novo* review of the denial in federal court.  *LaAsmar*, 605 F.3d at 797.  Even when the administrator ultimately renders a review decision, *de novo* review is required if the decision is issued after the regulation's strict 90-day deadline based on the following rationale:

> permitting plan administrators to avoid de novo review by belatedly denying an appeal after the deadline has passed and the claimant has filed suit would conflict with the ERISA's stated purposes, namely protecting the interests of participants in employee benefit plans and their beneficiaries, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

*Id.* at 798–99 (quotation omitted). The *LaAsmar* court noted that the Department of Labor, in revising the regulation at issue in this case, intended to "clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." *Id.* at 799 (quoting Pension and Welfare Benefits Administration, 65 Fed. Reg. 70246–01, 70255 (Nov. 21, 2000)).

Defendant concedes that its administrative review decision was issued 70 days after the 90-day deadline set by the regulation. Def's Resp. to Motion in Limine at 9. Defendant asks this Court to nonetheless apply a deferential standard of review for two reasons. First, it argues that it was in "substantial compliance" with the regulation, and therefore should not be punished with a *de novo* review of its benefits denial. *Id.* at 7. Second, it contends that the late review decision was caused by delays in obtaining records from Plaintiff's treating doctors. *Id.* at 5.

It is not clear, however, that the Tenth Circuit applies a "substantial compliance" standard to determining the timeliness of an administrative review. Although the Tenth Circuit applied such a standard in *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003), the court has subsequently cast doubt on whether a plan administrator's delay in issuing an administrative review can be excused for substantial compliance.

*See LaAsmar*, 605 F.3d at 800.  Even Defendant notes that *Gilbertson's* holding has been questioned as a result of changes in regulations applied to delayed decisions. Def's Resp. to Motion in Limine at 7 n.8.  Revisions to 29 C.F.R. § 2560.503-1(l) have erased language that would see a claim "deemed denied" if the timeline was breached. Instead, revisions included language that turn a failure to follow review procedures into a "deemed exhaustion" of administrative remedies.  29 C.F.R. § 2560.503-1(l); *LaAsmar*, 605 F.3d at 798.

    Even if a substantial compliance standard continues to apply, Defendant is not entitled to its benefit. Defendant suggests the delay was not really its fault because it was waiting for information from Plaintiff's doctors and the parties were at the time engaged in "an on-going, good-faith exchange of information between the administrator and the claimant."  *Id.*; Def's Resp. to Motion in Limine at 8–9.  But the record reveals that Defendant had long-ago told Plaintiff that it would be unable to render a decision on-time, and the final pre-lawsuit letter merely restates the same.  Doc. 1, Exh. B at 14 (August 15, 2013 letter stating Defendant would need until September 14, 2013 to render a review decision).

    The ERISA regulation at issue specifically sets out that a delay may be permitted if the Defendant is waiting for information that it has requested from the *claimant.*  29 C.F.R. § 2560.503-1(i)(4).  Defendant maintains that this provision applies equally to delays caused by Plaintiff's physicians, but such a reading would eviscerate the 90-day timeline by essentially making any delay not caused by the administrator attributable to the claimant.

In conclusion, Plaintiff will be given a *de novo* review of Defendant's benefits determination because Defendant failed to heed the timeline set forth in 29 U.S.C. § 2560.503-1(i).  The regulations set a bright-line rule for whether or not an administrative review decision is accorded deference, and failure to follow the 90-day deadline for issuing a review of a disability benefits denial precludes deferential review.  Even if substantial compliance were a defense to violating the regulations, Defendant has not substantially complied with the regulations – a seventy-days delay is, if anything, evidence of substantial non-compliance.  Further, Defendant has not established that its non-compliance was inconsequential or that it occurred in the context of an ongoing exchange of information with the claimant.

2. <u>Whether the Court should grant the motion in limine to exclude any information in the administrative record that post-dates August 15, 2013</u>

Having concluded that the Court will apply a *de novo* review of the administrative record, the question becomes whether the Court should grant Plaintiff's motion to exclude evidence in the administrative record that post-dates August 15, 2013, when Plaintiff presumptively exhausted available administrative remedies.  The administrative record filed by Defendant includes evidence which was available to it as the administrator up until its review decision was issued on November 25, 2013.  As a general rule, on an administrative appeal, a court should only consider evidence available to the administrator at the time it issued a decision.  Plaintiff argues, however, that the relevant date for cutting off evidence is provided by the regulation requiring a decision within ninety days, or August 15, 2013.

Defendant cites just one authority for the proposition that the administrative record it filed should not be abridged, *Van Winkle v. Life Ins. Co. of N. Am.*, 944 F.

Supp. 2d 558, 563 (E.D. Ky. 2013).  In the *Van Winkle* case, as here, the court considered a motion to strike contents of the administrative record introduced after the date the plaintiff's administrative remedies were presumed exhausted.  *Id.* The *Van Winkle* court contrasted the tardily-introduced evidence in that case to the situation in which the court is "asked to review documents not first presented to administrators[.]" *Id.* (citing *Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir. 1990)).  In the cited *Perry* case, the district court had affirmed the plan administrator's denial of disability benefits.  *Perry*, 900 F.2d at 965.  The claimant asked the district court to reconsider its decision, submitting new information that was not in the administrative record when the plan administrator denied the plaintiff's claim for benefits.  *Id.*  On appeal, the Sixth Circuit affirmed the district court's refusal to reconsider, holding that *whatever the applicable standard of review – de novo* or deferential – the district court could not consider evidence that was "not presented to the plan administrator in connection with a claim."  *Id.* at 966-67.

The Court concludes that evidence available to the administrator up until its November 25, 2013 decision actually denying benefits is properly considered by this Court.  Although the issue of abridging an administrative record appears to be one of first impression in the Tenth Circuit, there is ample precedent addressing the analogous question of when a plaintiff is entitled to *supplement* the administrative record with new evidence.  *See Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002).  Tenth Circuit precedent clearly permits a court to supplement the administrative record, in its discretion, when reviewing *de novo* the denial of a claim for benefits.  *Id.* at 1202.  If a Court is allowed to supplement the record for *de novo* review in order to

determine whether claimant was disabled, it makes little sense to exclude evidence that serves the same purpose simply because it is supplied by the administrator, not the claimant. In other words, if it is a matter of discretion whether to supplement the record, it is just as much a matter of discretion whether to limit it. Since the Court's task is to determine whether Plaintiff actually had the complained-of disability at the time she asserted entitlement to benefits, it will not exclude evidence available to the administrator and relevant to this determination simply because it was submitted after Plaintiff filed her lawsuit.

The Court will deny Plaintiff's motion in limine.

### III.  Defendant's motion for partial summary judgment

Defendant argues that Plaintiff failed to exhaust her available administrative remedies because she failed to submit a Long-Term Disability (LTD) claim to Defendant. Def's MSJ at 5. Exhaustion is not explicitly required by ERISA; rather, the doctrine is a judicially-created safeguard, akin to ripeness, that prevents every ERISA claim from turning, "literally, into a federal case." *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999). Exhaustion is not required, however, when it would be futile. *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir. 1998).

Defendant contends that Plaintiff's claim for LTD benefits should be dismissed without prejudice because there is no administrative record that this Court could use to determine whether or not Defendant wrongfully rejected Plaintiff's entitlement to LTD benefits. Def's MSJ at 8. Defendant points out that the policies for short-term and long-term benefits have different eligibility requirements and therefore require different

records.  For instance, Defendant points out that the LTD policy, unlike the STD policy, precludes benefits for pre-existing conditions.  *Id.* (citing AR 43).

      1.  <u>Whether Plaintiff filed a claim for LTD benefits</u>

Plaintiff maintains that she actually *did* request a determination of her eligibility for LTD benefits.  She cites to an April 12, 2012 letter in which Plaintiff asked Defendant for any "necessary documents" that would be required in order to prove her continued disability.  AR 153.  Courts have held that a letter can be sufficient to initiate an ERISA claim when its content is "reasonably calculated to alert the [administrator] to the nature of the claim and the request for administrative review."  *Powell v. AT & T Comms., Inc.*, 938 F.2d 823, 827 (7th Cir. 1991); *see also* AR 45 ("Claims should be filed on our forms.  If we do not provide our forms within 15 days after they are requested, you may submit your claim in a letter to us.  The letter should include the date disability began, and the cause and nature of the disability.").

Defendant cites to a case where an attorney's request for LTD claim submission forms was "buried" in a footnote in an eleven-page letter.  *Richardson v. Astellas U.S. LLC Employee Ben. Plan & Life Ins. Co. of N. Am.*, 610 F. Supp. 2d 947, 953 (N.D. Ill. 2009).  But here Plaintiff wasn't communicating through an attorney at the time of her April 12, 2012 letter.  Nor does the letter or the administrative record as a whole indicate that the nature of Plaintiff's disability was at all lost on the Defendant.  Indeed, Plaintiff had ceased to work with VeraLight, and her correspondence with Defendant is rife with references to an ongoing disability.

Having closely reviewed Defendant's pre-appeal correspondence with Plaintiff, the readily apparent takeaway is that neither party knew which plan they were talking

about. This is not simply because Plaintiff was being unclear; it is also because Defendant did nothing to dispel the confusion until Plaintiff filed this lawsuit. For example, Defendant's pre-appeal correspondence makes no distinction between the plan numbers. All of its letters merely state the prefix for both the STD and LTD plans. *See*, *e.g.*, AR 108. The confusion may have been compounded when an agent of Defendant advised Plaintiff that if her medical condition continued, Plaintiff's benefits would "automatically roll over" to LTD benefits. Doc. 31, Exh. A at ¶8.

Defendant also sent a letter to Plaintiff's counsel expressly referring to Plaintiff's appeal as an appeal under the LTD policy. AR 892. Whether or not this is a typographical error, as Defendant argues, *see* Def's MSJ at 6 n. 5, this fact shows that to a great extent, Defendant treated Plaintiff's eligibility for STD benefits interchangeably with any eligibility she would have under the LTD benefits plan. Because the evidence presents a genuine dispute of material fact as to whether Plaintiff "applied" for LTD benefits, Defendant's motion for summary judgment will be denied.

2. Plaintiff's futility argument

Plaintiff argues that even if the Court concludes she did not apply for LTD benefits, Plaintiff need not be required to exhaust available administrative remedies because pursuing such a claim would be futile. Pl's Resp. to MSJ at 7. Plaintiff sets forth two reasons that pursuing a "pro-forma LTD claim" would be a futile exercise. First, Defendant's definition of "disability" is the same for the purposes of evaluating eligibility for LTD and STD benefits. Pl's Resp. to MJS at 8 (citing AR 8-9, 34-35). Because Defendant has denied Plaintiff's STD claim, Plaintiff argues, Defendant would surely deny any LTD claim. Second, Plaintiff contends that Defendant has already

reviewed any evidence it would need to evaluate Plaintiff's LTD claim. Specifically, Defendant has already asked for, and presumably received, medical records from Plaintiff that predate her tenure at VeraLight. Thus, Defendant already has the information it would need to evaluate Plaintiff's entitlement to LTD disability payments under the pre-existing condition exclusion.

When Plaintiff requested that Defendant review its determination that she was no longer disabled and therefore ineligible to seek STD benefits, she said that the disability "continue[d]" to prevent her from working. AR 153. Plaintiff said this on April 12, 2012, less than two weeks before the maximum period for payment of STD benefits was to end. *Id.* Defendant's representatives also told Plaintiff that if she is found eligible for STD benefits, her eligibility for LTD benefits would automatically accrue when the STD benefit payment period ended. AR 99.

Futility of exhaustion depends on whether or not it would be "clearly useless" to force Plaintiff to seek review by Defendant of her claim for LTD benefits. *See McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1264 (10th Cir. 1998). There is some disagreement among courts about whether this "clearly useless" standard is subjective or objective. For example, in *McGraw*, the Tenth Circuit concluded that the plaintiff had exhausted her administrative remedies because an extensive record showed that defendant had essentially reached a definitive conclusion about the nature of plaintiff's disability and was simply denying any claims arising from the disability automatically. *Id.*

Other courts take a more objective approach, holding that futility is determined by the availability of review, not by whether such review would result in a favorable outcome. For example, Defendant points to *Gentle v. Kohler Co.*, 966 F. Supp. 2d

1276, 1293 (N.D. Ala. 2013), where the court held that exhaustion is determined not by whether the plaintiff would have been able to prevail in administrative review, but simply whether such review was available to the plaintiff at the time she filed her claim. *Id.*

Whatever the standard, here there are strong indications that the exhaustion of administrative remedies would be futile. First, Plaintiff appears to be time-barred from filing a LTD claim under the terms of Defendant's policy; more than one year and ninety days have passed since her original claim for STD benefits was made. *See* AR 45 (setting forth a one-year and ninety-day time limit on claims for LTD benefits). If that is the case, then pursuing review of her LTD eligibility would clearly, objectively, be futile.

Second, Defendant argues that because the LTD plan, unlike the STD plan, excludes pre-existing conditions, a determination on that issue must be established before this Court can determine Plaintiff's eligibility for LTD benefits. But this contention cannot be easily reconciled with Defendant's initial determination of a non-continuing disability given its finding that she had improved sufficiently to no longer be disabled and ineligible to receive STD payments. *See, e.g.,* AR 340. In other words, Defendant does not suggest it will grant Plaintiff's request for LTD benefits; rather, it appears that Defendant only seeks an opportunity to decide on which basis it will ground a denial of benefits. The Court therefore finds that Defendant's own correspondence gives rise to a genuine issue requiring ultimate resolution: whether or not Plaintiff requested LTD benefits and whether a request for such benefits would be futile in light of Defendant's earlier decision in the STD context that Plaintiff was no longer disabled.

The Court notes the broad remedial language of ERISA regulations which characterize a "claim for benefits" as "a request for a plan benefit *or benefits* made by a

claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e) (emphasis added). While substantive differences exist between the two plans at issue here (i.e., the pre-existing condition exclusion), there does not appear to be any difference between the requirements for making a claim, each plan's definition of a disability, and the factual basis for Plaintiff's claim for benefits.

ERISA and the regulations are intended to make it easy for people like Ms. Vugrin to seek and obtain what they are entitled to without obsessive attention to administrative pleading requirements. Insofar as Defendant is asking the Court to determine that its claim procedures are reasonable as a matter of law because they require separate requests for benefits available under different plans, Defendant's request is denied.

## CONCLUSION

The reasonableness of Defendant's denial of Plaintiff's claim for disability benefits will be reviewed under a *de novo* standard. Because Plaintiff's Motion in Limine makes no distinction between relevant and irrelevant evidence and only asks for the exclusion of all evidence in the administrative record beyond a certain date, it will be denied. Defendant's motion for partial summary judgment on Plaintiff's LTD claim must also be denied because there are genuine issues of material fact as to whether Plaintiff actually made a request for long-term disability benefits.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion in Limine (Doc. 20) and Defendant's Motion for Partial Summary Judgment (Doc. 29) are **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent